IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE
AT NASHVILLE

| | |
|---|---|
| GENESIS GLOBAL, INC., | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 06-81:I ) |
| JOHN A. O'BRIEN and MICHAEL ALBRIGHT, | ) ) ) |
| Defendants. | ) |

## COMPLAINT

Comes now the Plaintiff, Genesis Global, Inc. ("Genesis"), and for claim for relief against the Defendants, John A. O'Brien ("O'Brien") and Michael Albright ("Albright") would state to the Court the following:

1. Plaintiff Genesis is a company organized and existing under the laws of the State of California. Genesis' principal place of business is 2561 Warren Drive, Rocklin, California 95677.

2. Defendant O'Brien, upon information and belief, is a resident of the State of Maryland and has had requisite contacts to Tennessee for this Court to have jurisdiction and venue.

3. Defendant Albright, upon information and belief, is a resident of the State of Georgia and has had requisite contacts to Tennessee for this Court to have jurisdiction and venue.

4. Genesis' business is computer sales and the buying and selling of electronic parts, devices, and materials used in the computer industry. Genesis operates its business in an

Exhibit A

environment in which its customers and Genesis are interconnected through mutual buying and selling of their respective products. For its business to be successful, Genesis necessarily relies upon its employees to maintain close business contacts with its customers and vendors, and the relationships with these customers and vendors are an extraordinarily important asset of the company. With limited numbers of buyers and sellers in Genesis' niche in the computer market, any damage to Genesis' relationships with its customers and vendors will result in catastrophic damage and immediate and irreparable injury to Genesis. Genesis employed a resident of Tennessee during the time giving rise to this cause of action.

## COUNT I

### INDUCEMENT OF BREACH OF CONTRACT AND NON-SOLICITATION AND NON CONFLICT OF INTEREST COVENANTS

5. The allegations of paragraphs 1 through 4 are incorporated herein by reference as fully as if set forth herein verbatim.

6. Marlin Huddleston ("Huddleston"), a Tennessee resident and former employee of Genesis and a defendant in pending court action by Plaintiff Genesis, No. 05-1561-IV, Chancery Court for Davidson County, Tennessee, entered an Agreement with Genesis on December 6, 2004, that included a company's Employee and Confidentiality and Assignment Agreement ("ECAA"). A copy of the Agreement is attached hereto collectively as Exhibit A.

7. The Agreement included a limited and reasonable non-solicitation covenant in paragraph 12 and no conflict of interest covenant in paragraph 1, all in the ECAA designed to protect Genesis' legitimate business interests.

2

8. Huddleston received consideration for his entry into the Agreement and the covenant not to solicit and covenant of no conflict of interest concerning the confidential and proprietary information concerning Genesis' business.

9. Genesis' business niche in the computer market is specialized and the covenant not to solicit and no conflict of interest involving confidential and proprietary information by its employees is necessary to prevent immediate and irreparable injury and damage to Genesis.

10. Relevant portions of the Agreement are as follows:

Agreement paragraph 7 of the Employment Agreement in Exhibit A.

<u>Confidential and Proprietary Information</u>

    As a condition of your employment, you agree to sign the company's standard form of employee confidentiality and assignment of inventions agreement.

Paragraph 1 of the company standard form of Employee Confidentiality and Assignment of Inventions Agreement states:

    <u>Best Efforts; No Conflict of Interest</u>. During my employment with Genesis, I will devote my best efforts to the interests of Genesis and will not engage in other employment or in any activities determined by Genesis to be detrimental to the best interests of Genesis without the prior written consent of Genesis. I also agree to not engage in any work, paid or unpaid, that creates a conflict of interest with Genesis. If Genesis believes a conflict exists, Genesis may ask me to choose to discontinue the other work or resign my employment with Genesis. In addition, I agree that, during my employment with Genesis, I will not refer any client or potential client of Genesis to competitors of Genesis, without obtaining Genesis' prior written consent.

Paragraph 12 of the standard form of Employee Confidentiality and Assignment of Inventions Agreement states:

12. Non-Solicitation.

    12.1 Non-solicitation of Customers or Prospects. I acknowledge that information about Genesis' customers is confidential and constitutes trade secrets. Accordingly, I agree that during the term of this Agreement, I will not, either directly or indirectly, separately or in association with others, interfere with, impair, disrupt or damage Genesis' relationship with any of its customers or customer prospects by soliciting or encouraging others to solicit any of them for the purpose of diverting or taking away business from Genesis.

    12.2 Non-solicitation of Genesis' Employees. I acknowledge that information about Genesis' employees is confidential and constitutes trade secrets. Accordingly, I agree that during the term of this Agreement and for a period of one (1) year after the termination of this Agreement, I will not, either directly or indirectly, separately or in association with others, interfere with, impair, disrupt or damage Genesis' business by soliciting, encouraging or attempting to hire any of Genesis' employees or causing others to solicit or encourage any of Genesis' employees to discontinue their employment with Genesis.

11. The covenant not to have no conflicts of interest and non-solicitation is reasonable and of limited duration, limiting Huddleston during his employment and to a 12-month period after termination in which he may solicit customers or prospects of Genesis. It is not limited in geographic scope because Genesis competes in the international marketplace. Huddleston worked on deals conflicting with the interest of Genesis while employed by Genesis. Before his termination by Genesis, Huddleston worked on various deals including a Juniper deal, Avici deal, IRIS deal, and CD Connect deal. Given the global nature of Genesis' business, the lack of a defined geographical limitation in the non-solicitation and no conflict of interest covenant is reasonable. The non-solicitation and no conflict of interest restrictions do not prevent Huddleston from earning a livelihood or impose any undue economic hardship upon him.

Failure to enforce the non-solicitation covenant will cause immediate and irreparable loss and injury to Genesis.

12. The covenant not to solicit imposes only a limited restraint on Huddleston while protecting the legitimate economic interests of Genesis. The covenant not to solicit and not to disclose is not inimical to the public interest.

13. Absent the enforcement of the covenant, Huddleston will have an unfair advantage. Huddleston is intimately familiar with Genesis' business model, products, and customers. While he was employed as the Director of Strategic Purchase and Sales, Huddleston engaged in a pattern of conduct designed to damage Genesis' business and establish a competing business by utilizing deals and customers of Genesis.

14. Huddleston contacted Genesis' customers and vendors while employed by Genesis and upon information and belief, did obtain or attempted to obtain them as customers and vendors, customers and did business with them that should have been business opportunities of Genesis. Namely, Huddleston upon information and belief directed a Juniper deal, Avici deal, CD Connect and IRIS deals to himself and/or in conjunction with O'Brien and Albright to himself denying Genesis the opportunity although they were compensating Huddleston and paying his expenses.

15. Enforcing the non-solicitation covenant entered into by Huddleston with Genesis in their Agreement is critical to protect Genesis' business.

16. Huddleston has materially breached the Agreement and the covenants not to have conflicts of interest and non-solicitations.

17. Huddleston entered into a valid Employment Agreement with Genesis.

18. The Agreement contains a valid no conflicts and non-solicitation clause.

19. Genesis has fully performed all of its obligations under the Agreement and has fulfilled all conditions under the Agreement applicable to it.

20. Huddleston has actively and materially breached obligations under the Agreement. He did so during the time of this employment, and since his termination. The transactions with the Juniper Deal, Avici deal, and CD Connect and IRIS constituted a material breach of the Agreement.

21. Upon information and belief, Huddleston has attempted to solicit business for himself from Genesis' customers. This conduct occurred both before and after his termination as an employee of Genesis. He has sought to obtain, buy, and sell equipment for his own benefit rather than for the benefit of his employer.

22. Upon information and belief, Defendants induced Huddleston to breach its agreements with Plaintiff by paying him funds or splitting deals with Huddleston. Defendants fully knew of Huddleston's employment agreement with Plaintiff.

23. Genesis' remedy at law is plainly inadequate to afford it the benefit of the Agreement, which it entered into with Huddleston. Furthermore, Genesis avers that it will sustain immediate and irreparable injury unless this Court issues a temporary injunction restraining and enjoining Huddleston, his agents, servants, attorneys, employees and all persons in active concert or participation with him, including O'Brien and Albright from soliciting as business competitor and contacting Genesis' customers. Genesis avers that the injunctive relief sought herein in the form of the requested temporary injunction is necessary to preserve the

status quo pending this Court's resolution of Genesis' demand for enforcement of the no conflict of interest and non-solicitation covenant entered into by Huddleston.

## COUNT II

## CIVIL CONSPIRACY

24. The allegations of paragraphs 1 through 23 are incorporated herein by reference as fully as if set forth herein verbatim.

25. Huddleston, O'Brien and Albright have entered into a conspiracy to cause injury to Genesis and to Genesis' property and businesses. While Huddleston was employed by Genesis, O'Brien and Albright conspired to unlawfully obtain business opportunities rightly belonging to Genesis, including sales involving business transactions Genesis paid Huddleston to inspect and close. In violation of Huddleston's duty of loyalty to Genesis, he along with O'Brien and Albright conspired to obtain for themselves the businesses and customers of Genesis.

26. The Defendants acted in concert for an unlawful purpose, namely the theft of Genesis' property and business opportunities for their own gain.

27. Defendants' conspiracy has caused damages to Plaintiff. Defendants' overt actions in furtherance of the conspiracy have damaged Plaintiff's business.

28. Defendants have committed overt acts in furtherance of the unlawful purpose of the conspiracy to obtain Genesis' business opportunities and customers for themselves.

29. While Huddleston was employed by Genesis, O'Brien and Albright fully recognized Huddleston's employment with Genesis and specifically stated that Huddleston and O'Brien and Albright should be careful in their transactions as Huddleston was in full time

34. Genesis had existing business relationships as concerns the Juniper, Avici, CD Connect, and IRIS business.

35. Defendants were aware that Genesis has a business relationship and was working on various transactions.

36. Defendants intentionally interfered with the business relationships of Genesis as concerns the Avici, Juniper, CD Connect and IRIS transactions. Defendants' primary purpose was to obtain for themselves these business opportunities.

37. Defendants had improper motives and used improper means, including their access to Plaintiff's confidential and proprietary information, and business contacts established by Genesis to deprive Genesis of its business and customers for their own benefit.

38. Defendants intentionally and improperly interfered with Genesis' business relations through their misuse of inside or confidential information; breach of the fiduciary duty of loyalty; misappropriation of company property, bid lists, contact lists and prospect lists; Defendants' conspiracy to injure Genesis and deprive Genesis of its customers and business.

39. Defendants discussed compensation splits along with customers and business deals Genesis was entered into or entering into and knowingly acknowledged the taking of these deals (emails of transactions between Defendants attached as collective Exhibit B).

## COUNT IV

### PUNITIVE DAMAGES

40. The allegations of paragraphs 1 through 41 are incorporated herein by reference as fully as if copied herein verbatim.

41. As a direct and proximate result of the foregoing malicious, intentional, willful, and wanton misconduct of Defendants, Plaintiff has sustained immediate and irreparable injuries to their businesses, and their business relationships, for which Defendants are liable.

42. In addition to compensatory damages, the intentional injury of Genesis by Defendants, under the circumstances described hereinabove, constitutes such malicious, intentional, willful, and wanton behavior as to entitle Genesis to punitive damages in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00).

**PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF DEMANDS THE FOLLOWING:

1. That proper process issue and be served upon the Defendants requiring them to appear and answer or otherwise respond to the Complaint within the time required by law.

2. That this Court issue, pending a hearing on Plaintiff's motion for a temporary injunction, enjoining Defendants, their agents, servants, employees, attorneys and all persons in active concert or participation with them, from violating the non-solicitation clause of his Agreement.

3. That Plaintiff have and recover a money judgment against the Defendants, jointly and severally, for compensatory and punitive damages in the sum of Five Hundred Thousand Dollars ($500,000.00).

4. That the costs of this action, along with Plaintiff's attorney's fees be awarded to Plaintiff.

5. That Plaintiff receive such further and other general relief to which it may be entitled.

Respectfully submitted,

_____
ADRIAN H. ALTSHULER, #12550
5205 Maryland Way, Suite 320
Brentwood, Tennessee 37027
(615) 373-2500
Counsel for Plaintiff

**COST BOND**

We are surety for the cost of this cause not to exceed the sum of $500.00.

_____
Adrian H. Altshuler

11